John PAYNE and Virgie Payne,
Plaintiffs-Appellants,

v.

Gary Lynn PAYNE, Gina Payne, and
Walter Payne,
Defendants-Respondents.

John PAYNE and Virgie Payne,
Plaintiffs-Respondents,

v.

Gary Lynn PAYNE, Gina Payne, and
Walter Payne, Defendants-Appellants.

Nos. 13850, 13859.

Missouri Court of Appeals,
Southern District,
Division Three.

Aug. 5, 1985.

William G. Reeves, Gillihan & Reeves, Farmington, for plaintiffs-appellants-respondents.

Stephen E. Walsh, Summers, Cope & Walsh, P.C., Poplar Bluff, for defendants-respondents-appellants.

PER CURIAM:

These are cross-appeals from a purported judgment of the Circuit Court of Wayne County arising out of an unfortunate feud between neighbors and relatives. Because we conclude that the judgment was ineffective as a final judgment, and was merely an interlocutory determination of certain rights of the parties, it is necessary for us to dismiss the appeals.

Plaintiffs John and Virgie Payne, husband and wife, own a certain tract of land in Wayne County, Missouri. The record description of their property runs to a particular pair of intersecting quarter-quarter section lines as the north and east boundaries of the property. Defendants are Gary and Gina Payne, husband and wife, and Walter Payne, brother of Gary. Gary and Walter are nephews of John Payne. Gary and Gina own a tract of land which adjoins plaintiffs' land on the latter's north and east sides, with the relevant boundaries of record being the same quarter-quarter section lines which define plaintiffs' land.

As is often the case throughout the rural areas of Missouri, the described boundary lines failed to correspond with old "historic" fences which had existed in the neighborhood of the record boundaries. Testimony and admitted survey drawings indicate that these historic fences were located slightly inside the boundaries of record to plaintiffs' land. The distances of variation ranged between about six and 15 feet. Thus were created what are referred to by the parties as an "east strip" and a "north strip," lying respectively between the two historic fences and the boundaries of record of the two principal tracts. The east strip and north strip so created lie entirely within the area described by plaintiffs' title of record.

By the time of trial in the present case, plaintiffs had removed the historic fences and erected new fences on the record boundary lines as established by surveys. The historic fence lines were located and described by a survey which took into account various physical evidentiary indicia of where the old fences had run.

The present litigation was initiated by plaintiffs as an action for damages against Gary and Walter Payne for having allegedly driven vehicles into the east strip area in late 1981 and causing destruction of a surveyor's marker and some fencing materials along the east property line placed there by the effort and expense of plaintiffs. Gina Payne was not named as a party to this suit, which also requested injunctive relief against future trespasses.

The issues in the suit were seemingly expanded somewhat by the filing of a "counterclaim," which by the time of trial stated five counts, all of them being drawn in the names of "defendants" Gary and Gina Payne.[1] Count I was dismissed during the course of trial. The remaining

---

1. It is clear that strangers to an original suit may not merely inject themselves into the suit as defendants for purposes of asserting a counterclaim; that type of pleading assumes that the person making the claim was in the case as a defendant to plaintiff's original claim. *State ex rel. Saupe v. Swink,* 475 S.W.2d 466, 467–468[1, 2] (Mo.App.1971). Such a prospective party might enter the case by intervention. Rule 52.-12. Cf. *State ex rel. Pettis County v. Sloan,* 643 S.W.2d 618, 620 (Mo.App.1982). Over two years after Gina thrust herself into the cause, and after the filing of two amended counterclaims, Gary and Gina filed a motion to allow her joinder "to assert her claims against plaintiffs to protect her property interests." The motion was sustained on the day of trial. It would not appear that the procedures of Rule 52.12 were heeded by what happened. However, plaintiffs filed responsive pleadings with only token complaint, and do not now complain about Gina's status. We proceed upon the assumption that the trial court had jurisdiction over all the claims asserted.

claims made by Gary and Gina, all tried to the court in February of 1984 along with plaintiffs' original claim, were in four counts as follows: (II) for title to the east strip as a result of adverse possession as allegedly established in an earlier case;[2] (III) for damages for the removal by plaintiffs of the historic east fence, which fence would be the western boundary of the strip claimed by Gary and Gina in their Count II; (IV) for damages for removal by plaintiffs of the historic north fence, and the entry by plaintiffs into the north strip to erect the new fence on the record boundary line; and (V) for a judgment quieting title to the north strip in Gary and Gina by adverse possession.

The trial court first found that plaintiffs sustained damage as alleged in their petition by the wrongful actions of defendants Gary and Walter Payne. It denied injunctive relief, but entered judgment on the trespass claim against said defendants "in an amount equal to and offset by damages awarded to Defendants on Count [IV?] of their Second Amended Counterclaim."[3] Consistent with this judgment for plaintiffs, the court found that defendants failed to establish exclusive possession to the east strip, even by reference to the prior litigation pleaded, and that they therefore also had no right to damages for removal of the historic east fence as asserted in Count III of their counterclaim. However, the court did find that Gary and Gina had established the elements of adverse possession as to the north strip claimed in their Count V, and judgment was rendered accordingly declaring these defendants the owners of that land. Likewise, as to their Count IV, the court concluded that Gary and Gina were entitled to damages for loss of use of the north strip since the time plaintiffs took out the historic fence and erected the new fence on the line constituting the parties' common record boundary. However, the court added that "said damages are wholly offset by damages sustained by and awarded to Plaintiffs upon their Petition herein." Accordingly, judgment was entered in favor of defendants Gary Payne and Gina Payne without specification of what the damages were to which these defendants were deemed entitled.

Thus, the issues regarding the *east strip* were found in favor of plaintiffs, including their right to damages from Gary Payne *and Walter Payne*, and the issues regarding the *north strip* were found in favor of Gary Payne *and Gina Payne*, including their right to damages from plaintiffs.

Although not raised by the parties, the appealability vel non of the unusual judgment entered is a matter which necessarily commands our attention because such goes to our very jurisdiction. *Mainstreet Enterprises, Inc. v. City of Berkeley*, 656 S.W.2d 284, 285[1] (Mo.App.1983); *Steinmetz v. Missouri Highway & Transportation Commission*, 645 S.W.2d 36, 38[1] (Mo.App.1982); *First National Bank & Trust Co. of Joplin v. Pittock*, 572 S.W.2d 182, 183[3] (Mo.App.1978).

Under some circumstances, a judgment against a party may be set off against a judgment in that party's favor. This allowance of a set-off is a pro tanto payment of the demand. *Sturdivant*

2. Part of the record from prior litigation involving the two Payne couples and others was admitted in evidence in the present suit by agreement. In the prior suit, tried in 1981, the present plaintiffs unsuccessfully attempted to establish title by adverse possession to certain land east of their record boundary, but also involving somewhat inadvertently the land now referred to as the east strip. The theory of Gary and Gina in their Count II, urged at trial and in this court, was that the elements of adverse possession as to the east strip were in fact proved up in their favor during the 1981 trial.

3. Although the findings, conclusions and judgment make frequent use of the term "defendants" without specificity, it is clear from the pleadings that all results respecting the claims made by "defendants" were applicable only to Gary and Gina Payne, and not to defendant Walter Payne. It is permissible to interpret a judgment on the basis of the rest of the record even though, standing alone, the judgment is indefinite as to the specific parties intended. *See Wyma v. Kauffman*, 665 S.W.2d 82, 84 (Mo. App.1984).

*Bank v. Stoddard County,* 332 Mo. 568, 572, 58 S.W.2d 702, 704[4] (banc 1933). If the amounts are equal, then both judgments are deemed satisfied. *Clancy v. Reid-Ward Motor Co.,* 237 Mo.App. 1000, 1007, 170 S.W.2d 161, 164[4] (1943). Otherwise, an entry for the excess is made in favor of the party with the larger entitlement. *Turney v. Baker,* 103 Mo.App. 390, 394, 77 S.W. 479, 480[1] (1903); 2 Freeman on Judgments § 1142 (5th ed. 1925).

■ However, such a set-off requires that demands be mutual and subsisting between the same parties, and due in the same capacity or right. *Sturdivant Bank v. Stoddard County,* supra; *Mercantile Trust Co., Nat. Ass'n. v. Mosby,* 623 S.W.2d 22, 24[5] (Mo.App.1981). It is obvious that the supposed money judgments which were set off against each other in the present case did not meet this rule of mutuality of parties. On defendants' side, only Gary Payne was common to both relevant judgments. We are aware of a possible exception to the rule of mutuality where a set-off serves only to discharge a judgment *against* a nonmutual party, and therefore works him no prejudice. *See Mortland v. Holton,* 44 Mo. 58, 62 (1869); *Columbia Taxicab Co. v. Mercurio,* 236 S.W. 1096, 1097[1] (Mo.App.1921). "Thus a judgment in favor of A, and against B and C, may be set off against one in favor of B and against A, ..." 2 Freeman on Judgments, supra, § 1144. That is not the present case in that Gina Payne has a judgment in her favor, which was purportedly satisfied by set-off of a judgment against other defendants for conduct for which she was not sued nor found liable. Cf. *England v. Barnes,* 70 S.W.2d 69, 72[4] (Mo.App.1934). As a result, we conclude that we must assess the individual qualities of the apparent money judgments entered in this cause to see if the trial court has fully and properly exhausted its jurisdiction.

When examined in this light, it is apparent that the two partial judgments mentioned, as integral parts of the overall judgment encompassing the five claims tried in this action, are incomplete and do not fully dispose of the issues sought to be determined.

■ It does not help us to know that plaintiffs were found entitled to the same amount against Gary and Walter Payne as Gary and Gina Payne were found entitled as against plaintiffs. Having determined that these judgments are not mutually satisfied, they are individually entirely uncertain as to amount so that no execution logically could issue as to either. This conflicts with the quality of certainty required of judgments. That principle states that a judgment must fix the rights and responsibilities of the parties, with the obligor's duties readily understood so as to be capable of performance, and with the clerk able to issue, and the sheriff to levy, execution. *Luna v. Grisham,* 620 S.W.2d 427, 428[2] (Mo.App.1981); *Gerard v. Kodner,* 468 S.W.2d 677, 681[5] (Mo.App.1971); 49 C.J.S. Judgments § 72 (1947). Indeed, the situation is entirely like that of having determined that one party shall have a money judgment against another, but leaving the amount of the judgment blank. There is no basis for determining on the record before us what amount the court found the damages to be. *See Massey v. Massey,* 594 S.W.2d 296, 298[3] (Mo.App.1979). Perhaps, as seems more likely, it never reached a conclusion as to the amount.

■ There is venerable but sound authority for the proposition that a money judgment left blank as to amount, even though it determines some rights of the parties, is not a judgment, and is interlocutory and not final. 1 Black on Judgments § 25 (2d ed. 1902), citing *Follansbee v. Ballard Paving Co.,* 154 U.S. 651, 14 S.Ct. 1189, 25 L.Ed. 802 (1879); 1 Freeman on Judgments, supra, § 85. It has certainly been our view that a decree may be so indefinite as to be deemed not to be a final judgment and to require dismissal of the appeal. *Wyma v. Kauffman,* 665 S.W.2d 82 (Mo.App.1984). *See also Luna v. Grisham,* supra, 620 S.W.2d at 428[1]. Whenever a judgment, for whatever reason, is incomplete in some essential respect, the

appeal must be dismissed. *Kuta v. Collier*, 637 S.W.2d 734 (Mo.App.1982). These are but applications of the general rule that where one or more claims or parties remain without final disposition by the trial court, then the judgment as a whole, including portions otherwise final, is not yet a final judgment and not subject to appeal. *Elliott v. Harris*, 423 S.W.2d 831, 832[1] (Mo. banc 1968); *Steinmetz v. Missouri Highway & Transportation Commission*, supra, 645 S.W.2d at 38[2]; *State ex rel. Reynolds County v. Banderet*, 607 S.W.2d 893, 894[1] (Mo.App.1980). Such is the rule because a judgment is the final determination of the right of the parties, and, with exceptions not relevant here, final judgments are the stuff of appeals. *Taylor v. F.W. Woolworth Co.*, 641 S.W.2d 108, 110[1] (Mo. banc 1982); §§ 511.020, 512.-020, RSMo 1978.

Finally, we note that the special considerations summarized in Rule 81.06 are not applicable. First, there is no declaration by the trial court that remaining and sufficient portions of the judgment are final for purposes of appeal. Second, the disposed of and undisposed of claims arise out of the same subject matter and have an interdependent relationship making piecemeal decision inappropriate. *Luecke v. Missouri Department of Conservation*, 674 S.W.2d 691, 692[1] (Mo.App.1984); *Conrad v. Herndon*, 572 S.W.2d 216, 218 (Mo.App. 1978); *Crenshaw v. Great Central Ins. Co.*, 527 S.W.2d 1, 3[1] (Mo.App.1975).

We therefore conclude that the present appeals are premature and that we have no jurisdiction to determine the cause on its merits. Appeals dismissed.

All concur.