**John William JANES, Appellant–Respondent,**

v.

**Anita Jean JANES, Respondent–Appellant.**

**Nos. WD 66632, WD 66676.**

Missouri Court of Appeals, Western District.

Dec. 26, 2007.

---

1. All statutory references are to RSMo 2000, unless otherwise indicated.

Elton W. Fay, Columbia, MO, for appellant-respondent.

John T. Kay, California, MO, for respondent-appellant.

Before THOMAS H. NEWTON, Presiding Judge, PATRICIA BRECKENRIDGE,[1] Judge and JOSEPH M. ELLIS, Judge.

JOSEPH M. ELLIS, Judge.

John Janes ("Husband") appeals from a judgment entered in the Circuit Court of Cole County concluding that he was in arrears on his maintenance payments to his ex-wife, Anita Janes ("Wife"), and ordering a portion of his wages withheld until that obligation was satisfied. Wife cross-appeals, asserting that the trial court erred in offsetting the maintenance amount owed to her by Husband with amounts Wife owed to Husband as a result of the property settlement portion of the dissolution decree and a subsequent award of attorney's fees. For the following reasons, the judgment is affirmed.

On June 9, 1997, the Circuit Court of Cole County entered a judgment dissolving the marriage between Husband and Wife. In dividing the marital property and debts, the court awarded the marital home to Wife and awarded Husband a judgment against Wife in the amount of $12,000.[2] The court ordered Husband to pay Wife $250 per month in modifiable maintenance, but specified that maintenance would automatically cease if Wife were to receive $250 or more from Missouri State Disability Retirement, to which she had applied for benefits. The judgment also addressed custody and child support for the couple's teenage child.

Appellant paid maintenance until December 1997, when he discovered that Wife had been receiving checks from Missouri State Disability Retirement and that they totaled more than $250. Appellant ceased paying maintenance at that time.

On June 5, 2000, Wife filed a motion to modify the dissolution decree seeking a change in custody. That motion was ultimately denied by the trial court.

On August 26, 2002, Husband filed an Application for Show Cause Order and Motion for Contempt averring that Wife had violated the terms of the dissolution decree by refusing to return custody of the child to Husband, enrolling the child in school in California, Missouri, without his permission, and removing personal items belonging to Husband from his home without his permission. On September 5, 2002, the court granted Husband's motion for contempt, ordering Wife to return custody of the child to Husband and to return his personal property. The court also ordered Wife to pay Husband $1,300 in attorney's fees.

On March 12, 2004, Wife filed a Support Lien Request asserting that Husband was over $15,000 in arrears on his maintenance payments. Wife also filed a motion to modify custody. Wife subsequently filed an Application for Income Withholding, asking that a portion of his wages be withheld to satisfy Husband's past and current maintenance obligation. On May 17, 2006, the trial court entered judgment granting a lien to Wife and ordering a portion of Husband's wages withheld.

After noticing that income was being withheld from his paycheck, on July 1, 2004, Husband filed a Petition for Stay or

1. Breckenridge, J., was a member of this court at the time the case was argued and submitted. She was subsequently appointed a judge of the Supreme Court of Missouri but has been reassigned to this court as a special judge for the purpose of disposition of this case.

2. The judgment provided that the amount owed would be reduced to $10,000 in the event Wife was able to refinance within sixty days of the entry of the judgment and have Husband's name removed from the mortgage.

Quashing of Execution. On February 25, 2005, Husband filed a counter-motion to modify the dissolution decree, seeking an order directing Wife to pay the $12,000 she owed from the original decree, the $1,300 she owed him in attorney's fees, and repayment of any maintenance paid after Wife had received $250 or more from Missouri State Disability Retirement.

On January 6, 2006, the trial court entered its judgment, concluding that Husband's maintenance obligation had not terminated and that Husband was $17,375 in arrears. The court found that, under the dissolution decree, maintenance was not to cease unless Wife received $250 per month from Missouri State Disability Retirement. The court offset its judgment against Husband by the $12,000 Wife owed Husband from the dissolution decree and the $1,300 she owed to Husband for attorney's fees in the contempt action. The court also rejected an argument by Wife requesting that she receive credit toward the judgment against her based on the fact that she had quitclaimed the house back to Husband. Both parties appeal from the trial court's judgment.

■ As in any court-tried case, we must affirm the trial court's judgment "unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *Simon–Harris v. Harris,* 138 S.W.3d 170, 176 (Mo.App. W.D.2004). In making that determination, " '[w]e afford the trial court deference with regard to its determinations of credibility and view the evidence in the light most favorable to its decision.' " *Haden v. Riou,* 37 S.W.3d 854, 860 (Mo.App. W.D.2001) (quoting *Morton v. Myers,* 21 S.W.3d 99, 104 (Mo.App. W.D. 2000)).

■ In his first point, Husband contends that the trial court erred in concluding that he was in arrears on his mainte-

nance payments. Husband argues that the plain language of the original decree of dissolution provided that maintenance would automatically terminate once Wife had received more than $250 from Missouri State Disability Retirement and that this condition had been satisfied by January 1998 when he ceased making maintenance payments. Husband claims the court improperly read the language "per month" into the maintenance provision and, thereby, misinterpreted the judgment.

■ "Interpretation of the meaning of a trial court's judgment is a question of law." *Dick v. Children's Mercy Hosp.,* 140 S.W.3d 131, 136 (Mo.App. W.D.2004). "The words and clauses used in a judgment are to be construed according to their natural and legal import." *Lombardo v. Lombardo,* 120 S.W.3d 232, 244 (Mo. App. W.D.2003) (internal quotation omitted). "When interpreting a judgment, this court examines the language of the judgment in its entirety and determines the intention of the trial court from all parts of the judgment." *In re E.N.K.,* 126 S.W.3d 458, 463 (Mo.App. W.D.2004). "Where the language of the judgment is plain and unambiguous, we do not look outside the four corners of the judgment for its interpretation." *Saunders v. Bowersox,* 179 S.W.3d 288, 294 (Mo.App. S.D.2005) (internal quotation omitted). However, if the decree "conveys more than one meaning such that a reasonable person may fairly and honestly differ in the construction of the terms," then the language is ambiguous, *Riener v. Riener,* 926 S.W.2d 6, 7 (Mo.App. E.D. 1996), and the appellate court must ascertain the intent of the trial court in entering the order. *State ex .rel. Div. of Child Support Enforcement v. Hill,* 53 S.W.3d 137, 141 (Mo.App. W.D.2001).

In the original dissolution decree, the trial court found that Wife was unemployed and receiving social security disability in the amount of $790 per month. The court found that she had applied for disability through the State of Missouri and could receive up to $400 per month if such benefits were granted. The court also noted Wife's testimony that she could survive on $1,000 per month if awarded the marital home. The court subsequently awarded maintenance, stating:

> That [Husband] shall pay $250 per month for maintenance to [Wife] for her support, beginning June 1, 1997. This decree is modifiable as to maintenance. Maintenance shall cease when either party dies, or when the conditions for modification allow, including receipt of Missouri State Disability Retirement. Maintenance shall cease automatically when [Wife] receives $250 or more from Missouri State Disability Retirement.

If the termination of maintenance provision is read in isolation, it could certainly be interpreted in a manner consistent with Husband's argument. When considered in the context of the judgment as a whole, however, the clear intent of the trial court was for maintenance to cease in the event that Wife was to receive $250 or more *per month* from Missouri State Disability Retirement. Certainly that is the most logical interpretation under the trial court's findings and the circumstances presented. Husband offers no reasonable explanation as to why the trial court would have intended that the receipt of a total of $250 by Wife to warrant termination of Husband's $250 per month maintenance obligation, and we can discern none. Limitation on the duration of maintenance should be based upon a showing of an existing or impending change in the recipient spouse's financial condition. *Adair v. Adair,* 124 S.W.3d 34, 42 (Mo.App. W.D.2004). Receipt of a total of $250 by Wife hardly constitutes more than a nominal change in her financial condition. On the other hand, termination of monthly maintenance in the event that income stream is replaced by monthly income of an equal or greater amount makes perfect sense in the context of the findings of fact made by the court and constitutes a significant change in Wife's financial condition.

The trial court did not err in interpreting its previous judgment to require receipt of $250 per month or more in benefits to Wife before maintenance would automatically terminate. Point denied.

■ In his second point, Husband contends that the trial court erred in refusing to apply the doctrine of laches to bar Wife's claim that he was in arrears on his maintenance payments. Husband asserts that Wife waited an unreasonable length of time before making her claim and that he was prejudiced by that delay.

■ The equitable doctrine of laches may be invoked when a party has knowledge of his or her rights but unreasonably fails to assert those rights for an excessive period of time, resulting in legal detriment to the other party. *Lane v. Non–Teacher Sch. Employee Ret. Sys. of Mo.,* 174 S.W.3d 626, 640 (Mo.App. W.D.2005). This doctrine is disfavored, and its primary use is to prevent injustice. *Id.* Furthermore, "equity may not disregard a statutory provision, for where the legislature has enacted a statute that governs and determines rights of the parties under certain circumstances, equity, as much as the law, is bound thereby." *Id.* Therefore, "as a general rule the doctrine of laches will not bar a suit before the expiration of the period set forth in the applicable statute of limitations in the absence of special facts demanding extraordinary relief." *State ex rel. Gen. Elec. Co. v. Gaertner,* 666 S.W.2d 764, 767 (Mo. banc 1984).

Pursuant to § 516.350.2,[3] the statute of limitations for past-due periodic maintenance is ten years from the date that each payment is due. In this case, Husband missed his first payment in January 1998. Wife first sought to assert her rights in a "Support Lien Request" filed on March 22, 2004, well within the period allowed by the statute of limitations. Husband has failed to articulate "special facts demanding extraordinary relief" sufficient to warrant application of the doctrine of laches and, on the record, the trial court could more than reasonably have determined that such facts were not present in this case. Point denied.

■ We next turn to Wife's cross-appeal. In her first point, Wife claims the trial court erred in ordering her award of past-due maintenance offset by the $12,000 she owes Husband as part of the property division contained in the original dissolution decree and the $1,300 she owes Husband in attorney's fees. She argues that the case law precludes such an offset against maintenance.

In making her claim related to maintenance, Wife relies on *Poland v. Poland*, 895 S.W.2d 670 (Mo.App. W.D.1995). In *Poland*, father owed mother $9,537.45 in unpaid child support and maintenance. *Id.* at 671. In the proceeding for collection of unpaid child support, father claimed that he had been forced to pay several debts assigned to mother in the dissolution decree and that wife had significantly damaged marital property that had been awarded to him. *Id.* This Court affirmed the judgment for father against mother for $9,810.44 but held that the trial court erred in ordering the judgments offset. *Id.* at 671–72. In so doing, *Poland* stated that "[a] judgment for maintenance and child support is a special kind of judgment.

It is intended for the limited purposes of maintenance and child support." *Id.* at 672. *Poland* went on to hold that, due to the unique nature of child support and maintenance, those obligations may not be subject to offset and may only be satisfied by payment directly to the custodial parent and/or recipient spouse. *Id.*

While *Poland* purported to cite to several cases for this proposition, none of those cases involved maintenance, and they all dealt only with an offset against child support. *See Cooper v. Allstate Ins. Co.*, 735 S.W.2d 204, 206 (Mo.App. E.D.1987); *Sutton v. Schwartz*, 808 S.W.2d 15, 20 (Mo. App. E.D.1991); *Loveland v. Henry*, 700 S.W.2d 846, 851 (Mo.App. E.D.1985). "[A]wards of spousal maintenance and child support are two distinctly separate concepts." *Nichols v. Nichols*, 14 S.W.3d 630, 637 (Mo.App. E.D.2000). *Poland* offered no reasoning for treating maintenance the same as child support for the purpose of an offset, and no subsequent case law has relied upon *Poland's* holding with regard to maintenance.

■ A trial court has the inherent power to compel a set-off. *Helstein v. Schmidt*, 229 Mo.App. 275, 78 S.W.2d 132, 135 (W.D.1935). Where mutuality of debts and parties exists, the trial court may order a set-off. *Payne v. Payne*, 695 S.W.2d 494, 497 (Mo.App. S.D.1985). "[W]hether to allow a set-off in a particular case is usually left to the discretion of the trial judge." *Miles v. Werle*, 977 S.W.2d 297, 304 n. 2 (Mo.App. W.D.1998).

Unlike situations involving child support, for which the child is the intended beneficiary though not party to the dissolution action, *Gerlach v. Adair*, 211 S.W.3d 663, 669 (Mo.App. W.D.2007), maintenance is intended to benefit a spouse, who is party to the action. *Bean v. Bean*, 115 S.W.3d

**3.** All statutory references are to RSMo 2000 unless otherwise noted.

388, 395 (Mo.App. S.D.2003). Thus, a significant reason exists for precluding a set-off against child support that is not present where maintenance is concerned.

In the case at bar, based upon the original decree of dissolution, the trial court found that Husband was obligated to pay Wife $17,375 in maintenance arrearage. Based upon the property division in that original decree, the court found that Wife still owed Husband $12,000. Both maintenance and the division of property are meant to provide for the financial needs of the spouses. *Brueggemann v. Brueggemann*, 551 S.W.2d 853, 857 (Mo.App. E.D. banc 1977). Furthermore, related to a contempt proceeding to enforce the custody provisions of the original decree, the court found that Wife owed Husband $1,300 in attorney's fees.

The set-off in this case clearly involves obligations that are "mutual and subsisting between the same parties, and due in the same capacity or right." *Payne*, 695 S.W.2d at 497. Accordingly, we perceive no abuse of discretion on the part of the trial court in offsetting the awards. While we do not believe that it did so, to the extent that *Poland* can be read to categorically preclude a monetary judgment in favor of one spouse being offset against a maintenance arrearage owed to the other spouse, *Poland* should no longer be followed.

The trial court did not err in offsetting the judgments. Point denied.

■ In her second point, Wife contends she quitclaimed the marital home to Husband a year after the dissolution decree was entered and should have been afforded a credit toward the $12,000 she owed to Husband as a result thereof. The trial court specifically found that Wife was not entitled to a credit for quitclaiming the marital residence to Husband.

Wife does not cite, nor have we discovered, any evidence substantiating her claim that quitclaiming the property to Husband was intended to satisfy the judgment against her. Under our standard of review, we "view the evidence and all reasonable inferences drawn therefrom in the light most favorable to the judgment and disregard all evidence and contrary inferences." *Hart v. Hart*, 210 S.W.3d 480, 484 (Mo.App. W.D.2007). The trial court could more than reasonably have determined that Wife's defense that her debt to Husband was satisfied was not proven. Point denied.

■ Finally, Wife claims that the trial court erred in setting off the money she owed him for attorney's fees in the contempt proceeding against his maintenance arrearage because that order was not properly denominated a "judgment." This claim is wholly without merit.

Rule 74.01(a) provides that, in order to be a judgment, a writing must be signed by a judge, denominated a "judgment" or "decree," and properly filed. The requisite "judgment" designation may appear, however, in the heading, within the body of the writing, or in the entry on the docket sheet. *City of St. Louis v. Hughes*, 950 S.W.2d 850, 853 (Mo. banc 1997). In this case, while the heading did not declare the court's order to be a judgment, the body of the order stated, "[Wife] is ordered to pay [Husband] the sum of $1,300.00 for his attorney fees and costs of this action and [Husband] shall have a *Judgment* against [Wife] in the amount of $1,300.00 with the Judgment rate of interest of 9% per annum until paid." (Emphasis added).

The trial court did not err in finding that Wife had a valid obligation to pay Husband $1,300 in attorney's fees under its prior judgment that could be offset against the

maintenance arrearage owed to Wife by Husband. Point denied.

The judgment is affirmed.

All concur.